UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMARR D. MILINER,[1]

                              Petitioner,                    Case No. 5:16-cv-12783
                                                          Hon. Judith E. Levy

v.

PAUL KLEE,

                              Respondent.

_____/

## OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION TO DISMISS THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING EMERGENCY MOTION FOR BOND RELEASE

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Jamarr D. Milner, ("Petitioner"), was convicted after a jury trial in the Wayne Circuit Court of second-degree murder. MICH. COMP. LAWS § 750.316. He was sentenced to 35 to 70 years' imprisonment.

The amended petition raises four claims: (1) Petitioner's sentence exceeded the mandatory sentencing guidelines range, (2) insufficient evidence was presented at trial to sustain Petitioner's conviction, (3) Petitioner's Sixth Amendment rights were violated by the scoring of the

---

[1]     The case citation incorrectly names Petitioner as "Jamarr D. Miliner," but this opinion will refer to Petitioner's actual name: Jamarr D. Milner.

sentencing guidelines based on facts not proven beyond a reasonable doubt, and (4) Petitioner's counsel was ineffective for failing to object to the scoring of the sentencing guidelines. (ECF No. 10.)

Respondent filed a motion to dismiss the petition because it was filed after expiration of the one-year statute of limitations. 28 U.S.C. § 2244(d). The Court agrees and will dismiss the petition. The Court will also deny Petitioner a certificate of appealability and deny Petitioner's motion for release on bond.

## I. Background

The Michigan Court of Appeals summarized the facts surrounding Petitioner's state trial:

> This case stems from the death of Ronnita Bradberry (Bradberry) that occurred on November 4, 2012. Defendant's and Bradberry's son, JM, was five years old at the time of Bradberry's death. Defendant, Bradberry, and JM shared a bedroom in the home. Defendant's brother, Dwight Milner (Dwight), lived upstairs in the same home.
>
> On the night of November 3, 2012, Defendant and Windall Hall (Hall) were drinking alcohol at defendant's home. Defendant and Hall left the home at approximately 11:00 p.m. or midnight to go to a party. Defendant returned to the home at approximately 2:00 a.m. or 3:00 a.m.
>
> JM testified that he was sleeping with Bradberry in her bed. JM awoke to Bradberry yelling at defendant. Defendant punched Bradberry's face and head while she was lying down.

2

Dwight heard Bradberry say, "Stop, Jamarr." While Bradberry was on the floor, defendant hit her with the bedroom door and a fan. JM never saw Bradberry hit defendant during the altercation. Dwight did not see the altercation, but only heard the sounds of fighting. JM testified that after defendant stopped beating Bradberry, she was on the floor and motionless. Defendant walked out of the bedroom as Dwight entered. Dwight testified that Bradberry was on the floor, leaning against the bed, and her mouth was open. Dwight saw JM in the bedroom. Dwight tried to give water to Bradberry, but she was unresponsive. Defendant had a gun and left the home. Dwight called for the police and ambulance. Dwight told the 911 operator that someone had broken into the home and injured Bradberry because he was scared, nervous, and did not want to implicate defendant. JM testified that he was scared when he witnessed defendant beat Bradberry.

Ebony Towns (Towns) testified that defendant arrived at her home at approximately 5:00 a.m. Defendant told her that he had left a party and needed a ride home. However, Towns originally told the police that defendant said that he had a house and wanted her to move in with him. Defendant's shirt was ripped and he said that he had been wrestling with Dwight. Later that morning, defendant bought a different shirt from a gas station. Defendant told Towns that he and Bradberry were no longer dating.

Officer Douglas Mart responded to defendant's home and observed Bradberry on the ground with her eyes "wide open." JM was on the bed and leaning against Bradberry's shoulder. Officer Jamie Vajen also testified that JM was next to Bradberry and was in shock. JM told Vajen that his mother and father were arguing, his father picked up a fan, hit his mother in the face with the fan, and then left the home. There were no signs of forced entry at the home. Officer Johnell White, the officer in charge of the case, testified that defendant misled the police regarding his whereabouts at the

3

time of the murder. The medical examiner concluded that Bradberry died of asphyxiation.

*People v. Milner*, 2014 WL 4160423, *1 (Mich. Ct. App. Aug. 21, 2014).

The jury found Petitioner guilty of second-degree murder on March 21, 2013. The trial court sentencing him on April 8, 2013.

Petitioner pursued an appeal in the Michigan Court of Appeals. His brief on appeal claimed that the trial court erred in departing above the recommended sentencing guidelines range, and that the trial court improperly increased Petitioner's sentence for subjecting his son to the trauma of testifying against him at trial. On August 21, 2014, the Michigan Court of Appeals issued an unpublished opinion rejecting these claims. *Id.*

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On March 3, 2015, the Michigan Supreme Court denied leave to appeal by standard form order. *People v. Milner*, 859 N.W.2d 701 (Mich. 2015) (Table).

Petitioner's conviction became final 90 days later, on June 1, 2015, when the time for filing a petition for a writ of certiorari in the United States Supreme Court expired. See *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

A few days short of a year later, Petitioner signed and dated a *pro se* motion for relief from judgment on May 27, 2016. He sent the motion to the trial court from prison by first class mail. The trial court filed the motion for relief from judgment on June 2, 2016, one year and one day after his conviction had become final. The motion raised three claims: (1) insufficient evidence was presented at Petitioner's trial to support his conviction, (2) Petitioner's sentence was based on inaccurate information, and (3) Petitioner's counsel was ineffective for failing to request an instruction on involuntary manslaughter. The trial court denied the motion by order dated July 12, 2016. (ECF No. 21-13.)

Realizing that he had a potential problem with the statute of limitations, Petitioner attempted to initiate the present habeas action by filing a letter dated July 20, 2016, indicating he was seeking "an extension of time so I can finish up and file my writ of habeas corpus ... My toll time has run out as soon as I receive my order of denial from the lower court on my 6.500 motion for relief from judgment date 7-18-16." (ECF No. 1, PageID.1.)

Then, on December 5, 2016, Petitioner filed his first habeas petition. (ECF No. 4.) Petitioner also filed a motion to stay the case,

noting that he was pursuing collateral review in the state courts. (ECF No. 6.) The court granted the motion. (ECF No. 7.)

Meanwhile, Petitioner had filed a delayed application for leave to appeal in the Michigan Court of Appeals, but it was denied by form order of March 29, 2017. (ECF No. 21-16, PageID.895.) Petitioner next applied for leave to appeal to the Michigan Supreme Court, but that court also denied leave by form order. (ECF No. 21-17, PageID.1038.)

Having exhausted his state court collateral remedies, Petitioner next successfully moved to reopen the present case. (ECF Nos. 9 and 10.) Petitioner also moved to include additional issues—ones not presented on direct or collateral review to the state courts—but that motion was denied. (ECF. Nos. 11 and 13.)

Respondent thereafter filed its motion to dismiss the petition as untimely, Petitioner filed a reply, and the matter is now ready for decision. (ECF. Nos. 20 and 23.)

## II. Standard of Review

Though Respondent styles his motion as a motion to dismiss, it is properly construed as one for summary judgment because the motion and the record before the Court include documents outside of the pleadings.

*See, e.g.*, *Anderson v. Place*, No. 16-12675 ,2017 WL 1549763, at *2 (E.D. Mich. May 1, 2017). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In considering a motion for summary judgment, the court will construe all facts in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 587. If the movant carries their burden of showing an absence of evidence to support a claim, then the non-movant must demonstrate by affidavits, depositions, answers to interrogatories and admissions that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). This standard of review may be applied to habeas proceedings. *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

## III. Discussion

There is a one-year statute of limitation for petitions filed by state prisoners seeking federal habeas relief. 28 U.S.C. § 2244(d)(1). The limitation runs from one of four specified dates, usually either the day

when the judgment becomes final by the conclusion of direct review or the day when the time for seeking such review expires. § 2244(d)(1)(A). The limitation period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." § 2244(d)(2).

Section 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured in this case. No other section is implicated by the facts of the case, nor is one advanced as an alternate starting point by either party. Under this section, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The expiration of time for seeking direct review of Petitioner's conviction was June 1, 2015—90 days after the Michigan Supreme Court denied Petitioner's application for leave to appeal from his direct appeal, when the time for filing a petition for certiorari. *See Bronaugh*, 235 F.3d at 283.

This means that Day 1 of the limitations period was June 2, 2015. It also means that the last day of the one-year limitations period was June 1, 2016. *See, e.g.*, *Mack v. Chapman*, 2019 U.S. Dist. LEXIS 146942, at *2-3, 2019 (E.D. Mich. Aug. 29, 2019). Absent tolling, Petitioner's

habeas action is timely only if it was filed on or before June 1, 2016. *See id.*

The one-year statute of limitations may be statutorily tolled by properly filing a motion for post-conviction review in the state courts. *See* 28 U.S.C. § 2244(d)(2). This provision is the point at which the parties' theories diverge. Petitioner asserts that he started tolling the period of limitations before it expired on May 26 or 27, 2016, when he mailed his motion for relief from judgment to the state trial court. This is why, he claims, he attempted to initiate this action with his letter of July 25, 2016, explaining that he believed he only had a few days left on the limitations period, and he needed an extension of time to file his habeas petition before it expired days after the trial court denied his motion. (*See* ECF No. 1.)

Respondent, on the other hand, asserts that Petitioner had already missed the deadline by one day when he filed his motion for relief from judgment. Respondent asserts that the limitations period did not begin tolling when Petitioner placed his motion for relief from judgment to the trial court in the mail, but that it only started tolling when the state trial court filed it on June 2, 2016. (ECF No. 20, PageID.155.)

Respondent is correct. The "prison mailbox rule" applicable to prisoner filings in federal court (see Rule 3(d) of the Rules Governing Section 2254 Cases and *Houston v. Lack*, 487 U.S. 266, 270 (1988)), does not apply to state court filings. *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). An application for state post-conviction relief tolls the statute of limitations under section 2244(d)(2) only when it is "properly filed," meaning "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning ... applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Michigan does not recognize a "prison mailbox rule" for post-conviction motions filed in the state circuit court. *See* Mich. Ct. R. 7.205(A)(3); *People v. Lewis*, 490 Mich. 967 (2011); *Walker-Bey v. Dep't of Corr.*, 564 N.W.2d 171, 173 (Mich. App. 1997); *Hebron v. Smith*, 2001 WL 902621, at *2 (E.D. Mich. June 29, 2001). Accordingly, by the time Petitioner's motion for relief from judgment was filed by the trial court on June 2, 2016—an act that normally would have begun tolling the limitations period—the limitations period had already expired.

Petitioner may nevertheless overcome the statute of limitations if he can establish grounds for equitable tolling. A habeas petitioner is entitled to equitable tolling "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner's reply to Respondent's motion is drafted with poor handwriting, so it is difficult to discern what Petitioner is arguing. (ECF No. 23.) But it seems that, apart from contesting Respondent's calculations, Petitioner asserts that his mental illness excuses his untimeliness. Petitioner's only support for this contention is a notation in his presentence investigation report that Petitioner suffers from attention deficit disorder and bipolar disorder, and that he is prescribed Xanax and Seroquel. (*See id.*)

These allegations are insufficient to demonstrate grounds for equitable tolling. A habeas petitioner's mental incompetence may constitute an extraordinary circumstance which justifies equitable tolling of the one-year period, but only if that condition prevents the timely filing of a habeas petition. *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir.

2011). In other words, to be entitled to equitable tolling on this basis, a habeas petitioner must show that he was mentally incompetent and that the mental impairment was the cause for the late filing. *Id.*; *Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010); *see also Plummer v. Warren*, 463 F. App'x 501, 506 (6th Cir. 2012) ("Illness—mental or physical—tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period."). Petitioner does not meet this standard.

While Petitioner alleges that he is bipolar and suffers from attention deficit disorder, he does not elaborate on his condition. His pleadings do not establish that he is (or was) mentally incompetent or that his mental health condition impaired his ability to pursue legal proceedings on his own behalf throughout the relevant time period: from the time the Michigan Supreme Court denied leave to appeal on direct appeal, and during the fifteen months that followed until he finally filed his motion for relief from judgment. Indeed, based on Petitioner's pleadings, it seems that his late filing was the result of his failure to correctly calculate the statute of limitations, and not as a result of his mental illness. Furthermore, "speculation about the impact of mental

illness on the ability to timely file a habeas petition is not sufficient to warrant an evidentiary hearing." *McSwain v. Davis*, 287 F. App'x. 450, 457-58 (6th Cir. 2008).

Finally, the fact that Petitioner was only one day late does not provide a basis for equitable tolling. *See United States v. Locke*, 471 U.S. 84, 101 (1985) (rejecting filing  that was one day late); *Hartz v. United States*, 419 F. App'x 782, 783 (9th Cir. 2011) (affirming the dismissal of a federal habeas petition where petitioner "simply missed the statute of limitations deadline by one day.") Petitioner believed that he had until June 1, 2016, to send his motion for relief from judgment out in the mail, and he did not understand that the motion needed instead to be received and filed by that date. That sort of mistake does not present grounds for equitable tolling. *See*, *e.g.*, *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (the law is "replete with instances which firmly establish that ignorance of the law, despite a litigant's pro se status, is no excuse" for failure to follow legal requirements); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001). Petitioner has therefore failed to demonstrate entitlement to equitable tolling.

## IV. Conclusion

Accordingly, the petition was filed after expiration of the one-year statute of limitations, and Petitioner has failed to demonstrate grounds for equitable tolling. The petition will therefore be dismissed.

Furthermore, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief because the petition is barred by expiration of the statute of limitations. Reasonable jurists would not debate that Petitioner has failed to demonstrate grounds for equitable tolling based on his claimed actual innocence. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, a certificate of appealability will be denied.

Finally, because the case is dismissed, Petitioner's motion for release on bond, ECF No. 22, is denied as moot.

## V. Order

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner a certificate of appealability, and 3) **DENIES** Petitioner's motion for release on bond.

IT IS SO ORDERED.

Dated: August 10, 2020              s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2020.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager